The undersigned have reviewed the Opinion and Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate Order.
Accordingly, the undersigned find as fact and conclude as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as:
STIPULATIONS
1. At the time of the alleged injury which is the subject of this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all times relevant to this claim, the employer-employee relationship existed between plaintiff-employee and defendant-employer.
3. Defendant was a duly-qualified, self-insured employer under the Workers' Compensation Act at all times relevant to this claim.
4. The issues to be heard are: (a) whether plaintiff sustained a compensable injury on September 9, 1994; and (b) if so, to what benefits is plaintiff entitled as a result of the compensable injury.
************
Based upon all of the competent, credible, and convincing evidence of record, the undersigned make the following additional
FINDINGS OF FACT
1. At the time of the initial hearing, plaintiff was 47 years old and had been hired by defendant-employer on July 29, 1994, as a Divisional Financial Assistant for the Bed and Bath Division of defendant-employer.
2. The basic function of plaintiff's position was to assist the controller of mill accounting in the preparation of an effective and meaningful mill accounting program. Plaintiff assisted division controllers with various financial analyses and maintained and trained other employees with respect to the PC networks and financial reporting systems. These responsibilities required that plaintiff frequently use a computer.
3. On Friday, September 9, 1994, plaintiff was typing on a keyboard at a conference room table between the hours of 8:30 a.m. and 4:15 p.m. The computer work station plaintiff worked at on this day had some ergonomic problems. Sometime between the hours of 1:00 p.m. and 3:00 p.m. on September 9, 1994, plaintiff felt a hot sensation with sharp pains radiating down her neck. However, she continued her work at the keyboard in order to complete the assigned project. On Saturday, September 10, 1994, plaintiff again worked at the same work station from 8:00 a.m. until 3:45 p.m. She then took a break and worked until 5:45 p.m. On Sunday, September 11, 1994, plaintiff worked at the same work station from 1:30 p.m. until 8:35 p.m.
4. Plaintiff worked full work days beginning on Monday, September 11, 1994 through Thursday, September 15, 1994. At 2:30 p.m. on September 15, 1994, plaintiff reported to Dr. Stephen St. Clair, the occupational physician on duty at defendant-employer, that she was experiencing pain in her left arm, shoulder and elbow and pain on the top of her left hand.
5. On October 4, 1994, plaintiff saw Dr. Stephen C. Robinson of the Guilford Neurosurgical Associates, P.A. She complained to Dr. Robinson of discomfort in her left shoulder and left hand and reported discoloration of the fingers after movement of her hands. Dr. Robinson conducted a physical examination, which was normal, and he found no evidence of Raynaud's phenomenon or a cervical disc problem. Dr. Robinson stated that the etiology was unknown for her left shoulder pain. He requested the plaintiff to modify the length of time that she worked at a keyboard without a rest and to reposition her arms in relationship to her body. Dr. Robinson also noted that he would arrange an MRI scan of her cervical spine if her pain did not resolve itself with changes in her work habits.
6. An MRI was taken on October 18, 1994. Thereafter, plaintiff was referred to Dr. Ernesto Botero of the Guilford Neurosurgical Associates, P.A. The MRI revealed a herniated disc between C5-6 and some spondylosis.
7. Dr. Botero performed a cervical discectomy and fusion at C5-6 on October 28, 1994.
8. Plaintiff returned to work with defendant-employer on January 9, 1995.
9. Since the time of her surgery, plaintiff has experienced other medical problems for which she has been treated by numerous physicians. The additional problems include those symptoms consistent with Thoracic Outlet Syndrome and Fibromyalgia. However, plaintiff's numerous physicians have been unable to credibly or convincingly diagnose the cause of her multiple complaints. Plaintiff has failed credibly or convincingly prove by the greater weight of the competent evidence that the above-described problems relate back either to her cervical surgery or to a specific traumatic injury to her back.
10. Plaintiff was seen by Dr. Scott Spillmann for the purpose of an independent medical evaluation. Plaintiff experienced a fifteen percent permanent partial disability rating related to her back as a result of her herniated disc at C5-6.
11. There are numerous causes for a ruptured disc which include hyperextension, traumatic injury, or lifting heavy materials among other things. Where the exact causation of a particular injury involves complicated medical questions beyond the comprehension of laymen, then only an expert can give competent opinion evidence as to the causation of said injury. There is no doubt that plaintiff experienced a herniated disc. However, neither expert witness can credibly or convincingly state with a reasonable degree of medical certainty, that plaintiff's condition was caused by her typing on the computer keyboard on September 9, 1994. Dr. Ernesto Botero, the neurosurgeon who performed surgery on plaintiff, even stated that he seriously doubted that plaintiff's typing was the source of her ruptured disc.
************
Based upon the finding of fact, the Full Commission conclude as matters of law the following
CONCLUSION OF LAW
Plaintiff has failed to credibly or convincingly prove by the greater weight of the evidence that the conditions for which she has sought medical care were caused by or resulted from either an injury by accident or a specific traumatic injury to her back on September 9, 1994. N.C. Gen. Stat. § 97-2(6).
************
Based on the foregoing findings of fact and conclusion of law, the Full Commission enter the following
ORDER
1. The plaintiff's claim under the law must be, and is hereby, DENIED.
2. Each side shall bear its own costs, with the exception that the defendant shall pay an expert witness fee in the amount of $450.00 to Dr. Scott Spillmann and an expert witness fee in the amount of $500.00 to Dr. Ernesto Botero.
This case is ORDERED REMOVED from the Full Commission docket.
This the _____ day of June, 1997.
 S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
JHB:jmf